1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JENNIFER ANN SANTOS,              )     NO. CV 10-05916 AGR
           Plaintiff,                )
             v.                      )
                          )     **MEMORANDUM OPINION AND**
MICHAEL J. ASTRUE,                )     **ORDER**
Commissioner of Social Security,  )
           Defendant.                )
                          )

      Jennifer Ann Santos ("Santos") filed this action on August 16, 2010.  (Dkt. No. 3.)  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on September 3 and 14, 2010.  (Dkt. Nos. 9, 10.)  On May 11, 2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  (Dkt. No. 17.)  The court has taken the matter under submission without oral argument.

      Having reviewed the entire file, the court reverses and remands the decision of the Commissioner for further proceedings consistent with this opinion.

///
///
///

1

2

## I.

## PROCEDURAL BACKGROUND

On October 15, 2007, Santos filed an application for supplemental security income benefits, alleging an onset date of May 3, 2000.  Administrative Record ("AR") 16, 73-81.  The application was denied.[1]  AR 53.  Santos requested a hearing before an Administrative Law Judge ("ALJ").  AR 16.  On July 15, 2009, the ALJ conducted a hearing at which Santos appeared and testified.   AR 40-52.  The ALJ issued a decision denying benefits on August 3, 2009.  AR 13-26.  On June 10, 2010, the Appeals Council denied the request for review.  AR 1-5.  This action followed.

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

---

[1]  This was a prototype case, which allowed the claimant to go directly to a hearing from an initial denial and skip the reconsideration stage.  AR 53; *see also* 20 C.F.R. § 404.906(b)(4).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### DISCUSSION

**A**.  **Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

**B.**  **The ALJ's Findings**

The ALJ found that Santos had the following severe impairments: "hepatitis C, history of back pain, anxiety, polysubstance addiction disorder, and a paranoid disorder."  AR 18.  Santos did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  Santos had the residual functional capacity ("RFC") to perform medium work, except that "she is limited to simple, routine tasks with limited public and coworker contact."[2]  AR 20.  The ALJ found there were a significant number of jobs in the national economy that Santos could perform.  AR 25.

**C.**  **Treating Physicians**

Santos claims that the ALJ did not properly consider the opinions of her treating physician, Dr. Hakimian, and her treating psychologist, Dr. Baum.

An opinion of a treating physician is given more weight than the opinion of a non-treating physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate

---

[2]  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighting up to 25 pounds."  20 C.F.R. § 416.967(c).

3

1
2
3
4
5
6
7

reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and internal quotations omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

8

### 1.   Dr. Hakimian

9
10

The ALJ mentioned Dr. Hakimian's medical records in 2007.  AR 21, 121-29.

11
12
13
14
15
16
17
18

Two days before the hearing, Santos submitted Dr. Hakimian's medical records from December 2007 through June 2009.  AR 326-49, 380-83.  In July 2008, Dr. Hakimian noted that Santos' psychologist "agreed she is disabled."  AR 342.  Dr. Hakimian opined that Santos was unable to work in check-the-box forms dated March 4, 2008 and June 16, 2009.  AR 329, 345.  Dr. Hakimian appears to have diagnosed anxiety and arthralgia, and has generally prescribed Klonopin, Vicodin, and various other medications.  *E.g.*, AR 331-33, 335-36, 339-41, 344, 348.

19
20
21
22

Dr. Hakimian was contacted on March 3, 2008.  AR 106.  He reported that Santos has addiction problems with methadone and vicodin since 2006.  *Id.*  "Dr. Hakimian states he cannot tell the clmt's exact [] mental status but clmt's function significantly better w/o substance abuse."  *Id.*

23
24
25
26
27

The ALJ erred in not addressing Dr. Hakimian's opinions.  Although the Commissioner offers his interpretation of Dr. Hakimian's opinions, this court is constrained to review the ALJ's decision.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (error for district court to affirm based on evidence the ALJ did not discuss). This matter must be remanded for consideration of his opinions.

28

///

4

1

### 2.    Dr. Baum

2    Dr. Baum is a staff psychologist for the adult parole division of the

3    California department of corrections.  AR 379.  Dr. Baum appears to have seen

4    Santos during the period May-October 2008.  AR 23, 317.

5    Dr. Baum found that Santos had schizophrenia, paranoid type.  AR 312.

6    Dr. Baum opined Santos had a low IQ or reduced intellectual functioning.  AR

7    315.  Santos could not meet competitive standards for any work function, except

8    that she was seriously limited but not precluded from sustaining an ordinary

9    routine without special supervision, asking simple questions, and accepting

10   instructions from supervisors.  AR 314-15; *see also* AR 321, 379.  Dr. Baum

11   opined that Santos was not malingering and could not manage benefits on her

12   own behalf.  AR 316.

13   The ALJ gave Dr. Baum's opinion limited weight because the opinion (1)

14   did not explain the basis for its conclusions and (2) was inconsistent with the

15   opinions of the examining and state agency physician.  AR 23.

16    An ALJ "need not accept the opinion of any physician, including a treating

17   physician, if that opinion is brief, conclusory, and inadequately supported by

18   clinical findings." *Thomas*, 278 F.3d at 957.  An ALJ may discount a check-the-

19   box report that does not explain the basis of its conclusions. *See Batson v.*

20   *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly

21   rejected treating physician's conclusory check-list report).

22   Dr. Baum's checklist report and notes do not explain the basis for the

23   conclusions.  Although Dr. Baum checked off the boxes for Santos' symptoms,

24   Dr. Baum left blank the question that asks for clinical findings, including results of

25   mental status examinations, that support the severity of the patient's mental

26   impairment and symptoms.  AR 312-13, 379.  Dr. Baum left blank the question

27   ///

28   ///

5

1
2
that asked for an explanation, including test results, for a conclusion that the

patient had reduced intellectual functioning.[3]  AR 315.

3
4
5
6
        Santos argues that the ALJ improperly relied on the opinion of Dr.

Stolinsky, an examining physician.  AR 22-23.  An examining physician's opinion

constitutes substantial evidence when it is based on independent clinical findings.

*Orn*, 495 F.3d at 632.

7
8
9
10
11
12
        Dr. Stolinsky's opinion was based on a psychological evaluation and testing

of Santos on January 30, 2008.  AR 22, 291-95.  Dr. Stolinsky did not review any

documents prior to the evaluation.  AR 291.  Santos appeared disheveled, her

clothes were worn and unkempt, she had poor grooming, and she smelled of

alcohol.[4]  *Id.*  She appeared confused, unfocused, paranoid, and somewhat

psychotic.  AR 292.

13
14
15
16
17
18
19
        Dr. Stolinsky administered a series of tests, including Test of Memory

Malingering (TOMM), Wechsler Adult Intelligence Scale-III (WAIS-III) and the

Wechsler Memory Scale-III (WMS-III).  AR 291.  With respect to the TOMM, Dr.

explained that scores below 35 after the second trial are suspicious of

malingering.  AR 292.  "No one receives less than 10 that is not malingering."  AR

293.  Santos scored a 0 on the second trial, and Dr. Stolinsky found it "very likely"

that Santos was malingering.  AR 293.

20
21
        On the WAIS-III, an objective intelligence test, Santos had a full scale IQ of

22
23
24
25
26
27
        [3] Santos argues that the ALJ should have recontacted Dr. Baum to further
develop the record.  However, it is the claimant's duty to prove he or she is
disabled.  *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *see also* 42
U.S.C. § 423(d)(5)(A) (claimant must furnish medical and other evidence of his
disability).  "An ALJ is required to recontact a doctor only if the doctor's report is
ambiguous or insufficient for the ALJ to make a disability determination."  *Bayliss
v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  The ALJ did not find that the
record was ambiguous or inadequate to allow for the proper evaluation of Dr.
Baum's opinion.  Nor is there any indication that there are missing records.

28
        [4] Santos argues that she tested clean for alcohol use from September
2007 - July 2009.  *See* AR 352-75 (test results).  Dr. Stolinsky did not have these
records.

1    45, placing her in the low range of intellectual functioning.  AR 293.  On the WMS-

2    III, a test of memory functioning, Santos scored in an extremely low range.  *Id.*

3    She was unable to follow instructions, had poor concentration, and became

4    confused and agitated.  AR 293-94.

5        Dr. Stolinsky concluded: "The claimant can probably not do any kind of

6    tasks and could be a danger to self or others in the workplace.  But the TOMM

7    indicates serious malingering and the rest of the evaluation might truly be a bogus

8    attempt to make me believe she is paranoid and confused."  AR 294.  Dr.

9    Stolinsky diagnosed Santos with Malingering, Polysubstance Dependence, and

10   Borderline Personality Disorder, and rule out Anti-Social Personality Disorder.  *Id.*

11   She opined that Santos' substance abuse "apparently contributed to a fairly

12   substantial paranoid ideation."  *Id.*

13       The ALJ interpreted Dr. Stolinsky's report as indicating that Santos "is likely

14   a malingerer and polysubstance abuser."  AR 23.  Santos argues that Dr.

15   Stolinsky did not review Santos' medical records and, at the time of the evaluation

16   on January 30, 2008, was unaware that monthly tests indicated Santos was

17   negative for alcohol and illegal drugs during the period September 2007 through

18   July 2009.  AR 291, 352-75.  Santos argues this information was material

19   because, in other respects, the assessments of Santos' work abilities by Dr.

20   Baum and Dr. Stolinsky were not inconsistent except as to malingering.

21       It is not clear that Dr. Baum's opinion is inconsistent with the state agency

22   physician, Dr. Tashjian.  AR 23, 263-74.  In reviewing the evidence, Dr. Tashjian

23   noted significant inconsistencies between the findings of Dr. Stolinsky and Dr.

24   Siciarz.  AR 23 n.1, 274.  During an internal medical evaluation on January 16,

25   2008, Dr. Siciarz opined that Santos' mental status was clear, alert, and oriented

26   as to person, place, time, and purpose.  AR 249.  Just two weeks later, on

27   January 30, 2008, Dr. Stolinsky had observed Santos as confused, paranoid, and

28   somewhat psychotic.  AR 291-92.  Dr. Tashjian noted that in March 2008, Dr.

1  Hakimian provided an inconclusive response as to Santos' mental state and
2  function.  AR 106, 274.  Dr. Tashjian found insufficient evidence to assess
3  Santos' functional limitations under the B criteria.  AR 271.  Dr. Tashjian
4  diagnosed Santos as having an anxiety related disorder, personality disorder, and
5  a substance addiction disorder.  AR 263.

6      This matter is being remanded for evaluation of Dr. Hakimian's opinions.
7  On remand, the ALJ is free to reevaluate the entire medical evidence.

8      **D.   Credibility**

9      Santos argues that the ALJ erred in finding her subjective symptom
10  testimony not credible.  JS 18-22, 28-30.

11      "To determine whether a claimant's testimony regarding subjective pain or
12  symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter*
13  *v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, "the ALJ must determine
14  whether the claimant has presented objective medical evidence of an underlying
15  impairment 'which could reasonably be expected to produce the pain or other
16  symptoms alleged.'"  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.
17  1991) (en banc)).  The ALJ found that Santos had presented objective medical
18  evidence of underlying impairments that could reasonably be expected to cause
19  the alleged symptoms.  AR 24.

20      "Second, if the claimant meets this first test, and there is no evidence of
21  malingering, 'the ALJ can reject the claimant's testimony about the severity of her
22  symptoms only by offering specific, clear and convincing reasons for doing so.'"
23  *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility
24  determination, the ALJ 'must specifically identify what testimony is credible and
25  what testimony undermines the claimant's complaints.'"  *Greger v. Barnhart*, 464
26  F.3d 968, 972 (9th Cir. 2006) (citation omitted).  The ALJ may consider (a)
27  inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies
28  ///

between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ found that Santos's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessment. AR 24. The ALJ was not required to give clear and convincing reasons for discounting Santos' credibility because there was affirmative evidence of malingering. *See* AR 293-94. As noted earlier, Dr. Stolinsky suspected serious malingering due to Santos's TOMM score of 0 since "[n]o one receives less than 10 that is not malingering." *Id.*

Nevertheless, the ALJ provided clear and convincing reasons for finding Santos's testimony not credible: (1) lack of objective medical evidence supporting her subjective allegations; (2) conservative treatment; (3) inconsistencies between Santos' statements and activities; and (4) Santos's daily activities. *See* AR 24-25.

## 1. Objective Medical Evidence

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ found that, despite Santos' claims of significant physical limitations, the medical evidence did not support her claims. AR 21, 24. Not only did Santos never have any surgeries for her alleged physical impairments, but there were no MRI's or x-rays taken of her back or spine.[5] AR 24, 121-250.

## 2. Conservative Treatment

---

[5] The ALJ incorrectly stated there was no evidence of rib injuries since an x-ray taken in 2005 revealed irregularity of the 8th and 9th ribs and a midclavicular line. AR 24, 411. This error was harmless.

1    "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's

2    testimony." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  The ALJ found

3    that the objective medical evidence evidenced routine care since there were "no

4    increased medications for pain."  AR 24, 121-250.  Although Santos's medications

5    "fluctuated," they were not necessarily increased for pain.  AR 121-250.  Dr.

6    Hakimian noted that Santos had addiction problems with methadone and vicodine

7    since 2006.  AR 106.

8    ### 3.    Inconsistent Statements and Conduct

9    The ALJ considered inconsistencies between Santos' statements and

10   activities.  AR 24.  The ALJ noted that a letter dated July 14, 2009 from a drug

11   rehabilitation clinic indicated that, although Santos had been an opiate addict for

12   many years, she had been testing negative for illicit drugs for over a year (*i.e.*,

13   September 2007 - July 2009).  AR 352-75.  The ALJ found that the letter

14   contradicted Santos's testimony during the hearing on July 19, 2009 that she had

15   not used drugs for about five years.  AR 24, 45.

16   The ALJ did not err.  Although Santos tested negative for illicit drugs, she

17   tested positive for Methadone from September 2007- July 2009, which Santos

18   concedes is a drug used for "detoxifying from other opiates" and preventing

19   withdrawal symptoms in patients who were addicted to opiate drugs.  AR 353-75;

20   JS 29.  Dr. Hakimian noted Santos has addiction problems with methadone and

21   vicodin.  AR 106.  Even assuming the evidence is susceptible to more than one

22   rational interpretation, the court must defer to the Commissioner's decision.

23   *Moncada*, 60 F.3d at 523.

24   ### 4.    Daily Activities

25   The ALJ noted that Santos had failed to return her daily activities report to

26   the Social Security Administration.  AR 24.  The ALJ considered Santos'

27   testimony that she watches TV and tries to cook and clean the house.  The ALJ

28   found that the restrictions on Santos' daily activities were "mild." AR 19, 24-25,

10

1
2

47-49; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (The
///

3
4

ALJ may consider the claimant's daily activities as one of many factors in
weighing a claimant's credibility).

5
6
7
8

The ALJ's credibility finding is supported by substantial evidence.   "If the
ALJ's credibility finding is supported by substantial evidence in the record, we
may not engage in second-guessing."  *Thomas*, 278 F.3d at 959 (citing *Morgan v.
Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

9

### E.  Whether Santos's Impairment Met or Equaled a Listing

10
11
12
13
14
15
16
17
18

At step three of the sequential analysis, the claimant bears the burden of
demonstrating that her impairments are equivalent to a listed impairment that the
Commissioner acknowledges are so severe as to preclude substantial gainful
activity.  *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L. Ed.
2d 119 (1987).  "If the impairment meets or equals one of the listed impairments,
the claimant is conclusively presumed to be disabled.  If the impairment is not one
that is conclusively presumed to be disabling, the evaluation proceeds to the
fourth step."  *Id.* at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20
C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

19
20
21
22
23
24
25

"The listings define impairments that would prevent an adult, regardless of
his age, education, or work experience, from performing *any* gainful activity, not
just 'substantial gainful activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct.
885, 107 L. Ed. 2d 967 (1990) (citation omitted). "For a claimant to show that his
impairment matches a listing, it must meet *all* of the specified medical criteria.  An
impairment that manifests only some of those criteria, no matter how severely,
does not qualify."  *Id.* at 530 (emphasis in original).

26
27
28

"To *equal* a listed impairment, a claimant must establish symptoms, signs
and laboratory findings 'at least equal in severity and duration' to the
characteristics of a relevant listed impairment, or, if a claimant's impairment is *not*

11

listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1526. "'Medical equivalence must be based on medical findings.' A generalized assertion of functional problems is not enough to establish disability at step three." *Tackett*, 180 F.3d at 1100 (citation omitted).

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Santos asserts the ALJ erred in not considering whether she met Listing 12.05, which is met when there is a valid verbal, performance, or full scale IQ of 59 or less. 20 C.F.R. part 404, Subpart P, Appendix 1 § 12.05. Since Santos scored a verbal IQ of 48, a performance IQ of 47, and a full scale IQ of 45 on the WAIS-III test that Dr. Stolinsky administered, Santos argues she met the listing.

Santos' argument is without merit. Dr. Stolinsky opined that, given Santos' TOMM scores indicating serious malingering, "the rest of the evaluation might truly be a bogus attempt to make [her] believe she is paranoid and confused."[6] AR 294. Although Santos argues that Dr. Baum noted she has a low IQ, Dr. Baum did not check-off "12.05 Mental Retardation" as a category upon which Santos' medical disposition was based, despite checking-off others such as 12.06 for an anxiety-related disorder. AR 317. The ALJ did not err.

## F. The ALJ's Residual Functional Capacity Determination

Santos argues that the ALJ improperly determined her residual functional capacity. JS 32.

---

[6] "[S]ince the results of intelligence tests are only *part of the overall* assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. Pt. 404, Subpt. P, App. 1., § 12.00(D)(6) (emphasis added).

1   The Residual Functional Capacity (RFC) determination measures the

2   claimant's capacity to engage in basic work activities. *Bowen v. New York*, 476

3   U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986).  The RFC assessment is

4   a determination of "the most [an individual] can still do despite [his or her]

5   limitations." 20 C.F.R. § 404.1545(a).  It is an administrative finding, not a

6   medical opinion. 20 C.F.R. § 404.1527(e)(2).  The RFC takes into account both

7   exertional limitations and non-exertional limitations.  "When there is conflicting

8   medical evidence, the Secretary must determine credibility and resolve the

9   conflict." *Thomas,* 278 F.3d 947, 956-57 (citation omitted).

10   Because this matter is being remanded for consideration of Dr. Hakimian's

11   opinions, the ALJ is free to reconsider the RFC on remand.

12   **G.  Step Five of the Sequential Analysis**

13   Santos argues that the ALJ erred in determining that there were a

14   significant number of jobs in the national economy that she could perform.  JS 37.

15   At step five, the Commissioner bears the burden of demonstrating there is

16   other work in significant numbers in the national economy the claimant can do.

17   *Lounsbury v. Barnhart* , 468 F.3d 1111, 1114 (9th Cir. 2006). If the

18   Commissioner satisfies this burden, the claimant is not disabled and not entitled

19   to disability benefits.  If the Commissioner cannot meet this burden, the claimant

20   is "disabled" and entitled to disability benefits. *Id.*

21   "There are two ways for the Commissioner to meet the burden of showing

22   that there is other work in 'significant numbers' in the national economy that

23   claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to

24   the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2" (the

25   "grids"). *Id.* "Where a claimant suffers only exertional limitations, the ALJ must

26   consult the grids.  Where a claimant suffers only non-exertional limitations, the

27   grids are inappropriate, and the ALJ must rely on other evidence.  Where a

28   claimant suffers from both exertional and non-exertional limitations, the ALJ must

1   consult the grids first." *Id.* at 1115.  The grids are inapplicable when "a claimant's

2   non-exertional limitations are sufficiently severe so as to significantly limit the

3   range of work permitted by the claimant's exertional limitations."[7]  *Hoopai v.*

4   *Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (citation and quotation marks

5   omitted).  "Nonexertional impairments may or may not significantly narrow the

6   range of work a person can do."  Social Security Ruling 83-14.[8]  The ALJ may rely

7   on the grids alone "only when the grids accurately and completely describe the

8   claimant's abilities and limitations."  *Tackett,* 180 F.3d at 1102 (citation and

9   quotation marks omitted); *see also*, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule

10  200(e).  The testimony of a vocational expert is required where nonexertional

11  limitations significantly limit the range of work a claimant can perform.  *Tackett*,

12  180 F.3d at 1102.

13       Again, because this matter is being remanded for consideration of Dr.

14  Hakimian's opinions, the ALJ is free to reassess the analysis at step five of the

15  sequential analysis.

16                                    **IV.**

17                                  **ORDER**

18       IT IS HEREBY ORDERED that the decision of the Commissioner is

19  reversed and remanded for further proceedings consistent with this opinion.

20       IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

21  Order and the Judgment herein on all parties or their counsel.

22                                                   *Alicia G. Rosenberg*

23

24  _____

25       [7]  Nonexertional limitations include "postural and manipulative limitations such as difficulty reaching, handling, stooping, climbing, crawling, or crouching." *Lounsburry*, 468 F.3d at 1115; *see also* 20 C.F.R. § 404.1569a(c)(vi).

26

27       [8]  Social Security rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882

28  F.2d 1453, 1457 (9th Cir. 1989).

1    DATED: December 28, 2011

2                                  ALICIA G. ROSENBERG

                              United States Magistrate Judge